ELECTRONICALLY FILED
Jefferson County Circuit Court
Flora Cook-Bishop, Circuit Clerk
2026-May-05 16:16:39
35CV-26-696
C11WD02 : 23 Pages

**IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ARKANSAS**

**CIVIL DIVISION**

**MELBORN WAYNE HOGAN, individually and on behalf of all others similarly situated,**

**PLAINTIFF**

VS. CASE NO. ________________

**NITV, LLC; NITV FEDERAL SERVICES, LLC; CHARLES HUMBLE; AND JOHN DOES 1-5** **DEFENDANTS**

## CLASS ACTION COMPLAINT

**COMES NOW** Plaintiff, **MELBORN WAYNE HOGAN**, individually and on behalf of all others similarly situated, by and through counsel, **SUTTER & GILLHAM, P.L.L.C.**, and for his Class Action Complaint against Defendants **NITV, LLC; NITV Federal Services, LLC; Charles Humble; and John Does 1-5** (collectively, "NITV Defendants"), states and alleges as follows:

## NATURE OF THE ACTION

1. This is a class action lawsuit brought by Plaintiff Melborn Wayne Hogan, individually and on behalf of all persons employed by the Arkansas Department of Corrections ("ADC") who were subjected to a Computerized Voice Stress Analysis ("CVSA") examination administered using a device designed, manufactured, marketed, sold, or distributed by the NITV Defendants, and who were subsequently disciplined, suspended, or terminated from their employment with the ADC based in whole or in part upon the results of such examination.

EXHIBIT
A

2. The CVSA device is a purported deception-detection instrument that NITV has marketed to law enforcement and correctional agencies across the United States—including the ADC—as a scientifically reliable tool for detecting deception and verifying truth for purposes of employment discipline and law enforcement investigations. This representation is false. Decades of independent scientific research have established that voice stress analysis technology performs no better than random chance in detecting deception and has never been validated by peer-reviewed, double-blind scientific study. Dr. Frank Horvath—a leading academic in credibility assessment and psychophysiology whose career focused on these fields—has testified that multiple studies, including Hollien/Harnsberger (2000 & 2008) and Damphousse (2007), demonstrate that CVSA-type devices are no more reliable than chance, and that the Department of Defense has cautioned against using CVSA-type devices. Dr. Horvath was unaware of any peer-reviewed studies validating CVSA accuracy.

3. A published federal ruling has already denied NITV's attempt to avoid trial on materially similar CVSA theories. In Crowe v. County of San Diego, No. 99CV0241 R (RBB), 2003 U.S. Dist. LEXIS 29574 (S.D. Cal. Feb. 24, 2003), the district court denied NITV's motion for summary judgment on strict-liability, negligent design, and negligent overpromotion claims. The court found that NITV's marketing and training induced investigators to treat CVSA output as reliable lie-detection evidence—including by representing a "97 percent" reliability rate—that such use was reasonably foreseeable, and that a reasonable factfinder could conclude a device intended for truth-verification but incapable of verifying truthfulness is "reasonably certain to be dangerous." NITV's attack on witness credibility could not sustain summary judgment; credibility determinations are for the jury.

4. Despite this well-established scientific consensus, and despite prior notice from lawsuits, complaints, and documented instances of false positives—including the Crowe litigation, a false confession and wrongful murder conviction in California, and at least one prior wrongful termination of an ADC employee based on an erroneous CVSA result—NITV has continued to sell and market its devices to the ADC and to train ADC examiners, while affirmatively representing that the CVSA reliably distinguishes truthful responses from deceptive ones.

5. As a direct and proximate result of the NITV Defendants' defective product, false and misleading marketing representations, negligence, and knowing disregard for the rights of persons subjected to their devices, Plaintiff and the Class Members have suffered wrongful termination, loss of wages and benefits, harm to their professional reputations, and severe mental, emotional, and physical suffering.

6. Plaintiff seeks compensatory damages, punitive damages, attorneys' fees, costs, and all other appropriate relief on behalf of himself and the Class.

## PARTIES

7. Plaintiff, **MELBORN WAYNE HOGAN**, is a citizen and resident of Jefferson County, Arkansas. On or about March 31, 2026, Plaintiff was terminated from his employment with the ADC based upon a false accusation that he had committed a policy violation. In truth and in fact, Plaintiff had not committed any policy violation. The termination was based in whole or in substantial part upon a CVSA examination result generated by an NITV device administered by an NITV-trained examiner. That result purported to show that Plaintiff was "deceptive." The result was false. Plaintiff answered all questions honestly. The false

result was a product of the CVSA device's inherent and well-documented unreliability—not of any dishonesty on Plaintiff's part.

8. Defendant, **NITV, LLC**, is a limited liability company with a principal address of 9999 Collins Ave., 12-A, Bal Harbour, Florida, 33514. Its registered agent is Charles Humble at the same address. NITV, LLC is engaged in an industry substantially impacting interstate commerce through the design, manufacture, licensing, sale, and marketing of CVSA devices and related training and consulting services to government and private-sector clients throughout the United States, including in Arkansas. NITV, LLC and NITV Federal Services, LLC are plausibly jointly responsible for the design, marketing, licensing, and training activities challenged herein, as those activities are interrelated and jointly branded as "NITV." Which entity is responsible for particular corporate functions is a matter within Defendants' exclusive knowledge to be established through discovery.

9. Defendant, **NITV FEDERAL SERVICES, LLC**, is a limited liability company with a principal address of 11400 Fortune Cir., West Palm Beach, FL 33414. Its agent for service of process is Charles Humble at the same address. NITV Federal Services, LLC is engaged in an industry substantially impacting interstate commerce through the sale, marketing, and support of CVSA devices and services to law enforcement and government agencies, including the ADC.

10. Defendant, **CHARLES HUMBLE**, is the inventor of the CVSA and a director and officer of both NITV, LLC and NITV Federal Services, LLC. The CVSA was devised by Humble after his experience using and training others on Dektor's Psychological Stress Evaluator (PSE); the CVSA is functionally equivalent to the PSE—Humble essentially converted the analog PSE concept into a computer-based instrument. United States v. Pope, No. 1:18-

CR-00017-GNS-HBB-1, 2019 U.S. Dist. LEXIS 175507, at *10 (W.D. Ky. Aug. 19, 2019). Humble personally designed the CVSA device, directed its marketing and sale to the ADC, and personally controls and directs the training programs through which ADC examiners were certified to operate the device. As inventor, developer, and longtime trainer and promoter of the CVSA, Humble knew or should have known that the CVSA could not do what NITV marketed it to do, yet continued to authorize accuracy claims and training that foreseeably influenced disciplinary decisions. This constitutes direct participation in negligent design, negligent overpromotion, and intentional or reckless misrepresentation, for which Humble is individually liable. Additionally, pursuant to Ark. Code Ann. § 4-88-113, every officer or director of a person who directly or indirectly controls, facilitates, assists, or aids another person in violating the Arkansas Deceptive Trade Practices Act is jointly and severally liable if that person knew or reasonably should have known of the facts giving rise to the violation.

11. Defendants **John Does 1-5** are individuals and entities whose identities are not yet fully known to Plaintiff but who are believed to have participated in the sale, marketing, distribution, training, or support of CVSA devices used by the ADC, including companies facilitating the sale of CVSA equipment to the State of Arkansas. Plaintiff will amend this Complaint to name the Doe Defendants once their identities are ascertained through discovery.

12. At all relevant times, each Defendant was the agent, servant, partner, joint venturer, and/or co-conspirator of the other Defendants and was acting within the course and scope of such agency, service, partnership, venture, or conspiracy. Each Defendant ratified, authorized, and/or directed the acts of the others.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction over this action pursuant to Ark. Code Ann. § 16-13-201, as the amount in controversy exceeds the minimum jurisdictional threshold and the claims arise under Arkansas law.

14. This Court has personal jurisdiction over the NITV Defendants because they have purposefully directed their commercial activities at Arkansas, including by contracting with the ADC, selling CVSA devices for use in Arkansas, training ADC employees in Arkansas, and conducting and consulting on CVSA examinations in Arkansas, thereby purposefully availing themselves of the privilege of conducting activities within this State.

15. Venue is proper in Jefferson County pursuant to Ark. Code Ann. § 16-60-101 because a substantial part of the events giving rise to Plaintiff's claims occurred in Jefferson County, including Plaintiff's employment with the ADC and his wrongful termination.

## GENERAL FACTS

### A. The CVSA Device and NITV's Fraudulent Marketing Scheme

16. NITV has designed, manufactured, licensed, marketed, and sold CVSA devices for use in employment and law enforcement settings for decades. The CVSA purports to analyze the human voice for stress patterns that NITV claims are associated with deception, and to produce a reliable determination as to whether the subject of an examination is being truthful or deceptive.

17. These representations are false and have been known to be false by NITV at all relevant times. Scientific research—including peer-reviewed studies by Hollien and Harnsberger

(2000 and 2008) and Damphousse (2007)—has uniformly concluded that voice stress analysis technology performs no better than random chance in detecting deception. The Department of Defense has cautioned against the use of CVSA-type devices. No peer-reviewed, double-blind scientific study has validated the CVSA's accuracy. No independent scientific body has certified the reliability of NITV's products.

18. NITV has never subjected its devices to peer review. NITV has never conducted double-blind studies to establish the reliability or effectiveness of its devices. NITV did not develop its devices using accepted scientific methodology. The utility of marketing a device as a truth-verification tool is effectively zero if the device cannot perform that function; the risk—false "deception" findings that trigger termination and reputational devastation in high-stakes employment settings—is grave and was foreseeable to NITV. Under Restatement (Second) of Torts §§ 291-295, this risk-utility imbalance establishes unreasonable risk of harm as a matter of pleading.

19. Despite this total lack of scientific validation—and despite having actual notice from prior litigation (including Crowe and at least one prior Arkansas termination), complaints, and documented false positives—NITV has continued to market and sell its devices to government agencies, including the ADC, representing that the CVSA reliably and accurately detects deception for purposes of employment discipline.

20. NITV's marketing materials, sales presentations, and training programs have affirmatively represented to ADC officials and ADC-certified examiners that CVSA results are scientifically reliable, highly accurate, and appropriate bases for employment decisions including termination. In prior litigation, an NITV-trained detective told teenagers that the CVSA had a "97 percent" reliability rate and was "foolproof." These representations are

false, and NITV knows them to be false. Such overpromotion foreseeably causes decision-makers—including ADC officials—to rely on CVSA output as proof of deception in disciplinary decisions, as recognized in Crowe.

21. NITV trains individuals employed by law enforcement and correctional agencies to operate CVSA devices and to interpret results. This training is conducted without meaningful scientific basis and conveys to trainees an unjustified confidence in the accuracy and reliability of CVSA results—constituting negligent overpromotion under applicable Restatement principles and the standard recognized in Crowe.

22. NITV's trainers and consultants regularly advise the agencies to which NITV has sold CVSA devices on the interpretation of examination results, including results used as the basis for employee terminations.

23. Prior to Plaintiff's termination, NITV had actual notice that its CVSA device produced false results causing wrongful employment consequences. NITV had been sued in Crowe, had received multiple complaints documenting false positives, knew of a false confession and wrongful murder conviction in California attributable in part to CVSA use, and knew that at least one ADC employee in Arkansas had previously been terminated based on a false CVSA positive. Notwithstanding this prior notice, NITV continued its conduct unchanged.

## B. NITV's Sale of CVSA Devices to the ADC and Training of ADC Examiners

24. At a time presently unknown to Plaintiff but to be established through discovery, NITV sold or licensed one or more CVSA devices to the ADC for use in employment investigations, including investigations of correctional officers and other ADC employees accused of policy violations such as bringing contraband into a facility.

25. NITV trained ADC employees, including examiner Joshua Hickey and others whose identities are known to NITV, to operate CVSA devices and to interpret CVSA results for purposes of employee discipline. This training falsely represented the CVSA as a reliable deception detection tool and instructed ADC examiners to treat CVSA results as scientifically valid grounds for adverse employment action.

26. NITV's trainers and consultants have advised and consulted with ADC officials and examiners—on a continuing basis—regarding the administration and interpretation of CVSA examinations, including by responding to inquiries from ADC about specific examination results.

27. As a result of NITV's marketing, sale, and training activities, the ADC adopted and maintained a practice and policy of using CVSA examinations as a basis for employee discipline, including termination, with the expectation—created and sustained by NITV's overpromotion—that CVSA results reliably identify deceptive employees.

28. Any EULA, policy caveat, or disclaimer language to the effect that CVSA results should be corroborated does not break the causal chain between NITV's overpromotion and the ADC's reliance on CVSA results. NITV's aggressive accuracy representations foreseeably negated such caveats in practice—exactly as recognized in Crowe—and whether such caveats effectively insulated NITV from liability is a question of fact for the jury, not a basis for dismissal at the pleadings stage. See also Ward v. Walker, 206 Ark. 988, 992, 178 S.W.2d 62, 64 (1944) (where an accident results from two concurring causes, both negligent actors are liable).

## C. The Wrongful Termination of Plaintiff Melborn Wayne Hogan

29. Plaintiff Melborn Wayne Hogan was employed by the ADC in Jefferson County, Arkansas, in a capacity on information and belief as a correctional officer or similar position. Plaintiff performed his duties competently and without legitimate basis for discipline.

30. At some time prior to March 31, 2026, Plaintiff was accused—on information and belief—of committing a policy violation in connection with his employment at the ADC. Plaintiff denies having committed any policy violation. The accusation against Plaintiff was false.

31. As part of the ADC's investigation, Plaintiff was subjected to one or more CVSA examinations administered using a device designed, manufactured, and sold by the NITV Defendants, operated by an examiner trained and certified by NITV. The examination was administered using NITV's device, software, and protocols consistent with NITV's training.

32. The CVSA examination produced a result purporting to show that Plaintiff was "deceptive." That result was false. Plaintiff was not being deceptive. He answered all questions honestly. The false result was a product of the CVSA device's inherent unreliability, not of any dishonesty on Plaintiff's part.

33. Based in whole or in substantial part upon the false CVSA examination result, and relying upon NITV's representations that the CVSA reliably identifies deceptive responses, the ADC terminated Plaintiff's employment on or about March 31, 2026.

34. As a direct and proximate result of Defendants' conduct, Plaintiff suffered the loss of his employment, loss of wages and employment benefits, harm to his professional reputation, and severe mental, emotional, and physical suffering.

## CLASS ACTION ALLEGATIONS

35. Plaintiff brings this action on behalf of himself and all members of the following Class pursuant to Rule 2 of the Arkansas Rules of Civil Procedure:

> All persons who were employed by the Arkansas Department of Corrections at any time during the three (3) years preceding the filing of this Complaint, who were subjected to a CVSA examination administered using a device designed, manufactured, sold, or distributed by NITV, LLC or NITV Federal Services, LLC, and who were subsequently disciplined, suspended, or terminated from their employment with the ADC based in whole or in part upon the results of such examination.

36. Excluded from the Class are the Defendants; any parent, subsidiary, or affiliate of any Defendant; any person who is an officer, director, or employee of any Defendant; any judge assigned to this action and members of his or her immediate family; and any person who timely opts out of the Class.

37. NUMEROSITY. The Class is so numerous that joinder of all members is impracticable. On information and belief, the ADC has administered CVSA examinations to numerous employees over the class period and has terminated or otherwise disciplined multiple employees based upon CVSA results. The precise number of Class Members is presently unknown to Plaintiff but is known to the NITV Defendants and the ADC and will be ascertained through discovery. Plaintiff believes the Class consists of no fewer than forty (40) individuals.

38. COMMONALITY. Common questions of law and fact exist as to all Class Members and predominate over any questions affecting only individual members, including:

(a) Whether the CVSA device is scientifically reliable and capable of accurately detecting deception at a rate better than chance;

(b) Whether NITV knew or reasonably should have known that the CVSA device is not scientifically reliable, including in light of Crowe, the Hollien/Harnsberger studies, the Damphousse study, Department of Defense warnings, and prior complaints;

(c) Whether NITV made false or misleading representations to the ADC regarding the CVSA device's reliability and accuracy, including through marketing, training, and consulting activities;

(d) Whether NITV's CVSA device is a defective product under Ark. Code Ann. § 16-116-102 in that it cannot perform its intended and marketed function of reliably detecting deception, rendering it unreasonably dangerous in its foreseeable use as a truth-verification tool;

(e) Whether NITV's training of ADC examiners constituted negligent overpromotion that foreseeably induced reliance on CVSA output in high-stakes disciplinary decisions;

(f) Whether NITV's conduct constitutes negligence, products liability, defamation, false light, and/or violations of the Arkansas Deceptive Trade Practices Act, Ark. Code Ann. § 4-88-101 et seq.;

(g) Whether punitive damages are warranted against NITV for intentional, reckless, and knowing misconduct;

39. TYPICALITY. Plaintiff's claims are typical of the claims of the Class. Plaintiff, like each Class Member, was employed by the ADC, was subjected to a CVSA examination using an NITV device, received a false "deceptive" result, and suffered adverse employment consequences as a result of NITV's defective product and false marketing representations. The factual and legal bases of NITV's liability are the same for Plaintiff and all Class Members.

40. ADEQUACY. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has no interests antagonistic to those of the Class. Plaintiff has retained counsel with substantial experience in class action litigation and complex civil rights and products liability matters, who are competent to prosecute this action on behalf of the Class.

41. PREDOMINANCE AND SUPERIORITY. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. The common questions of law and fact identified above predominate over any individual questions. Individual prosecution of separate actions by each Class Member would create a risk of inconsistent adjudications, would be economically inefficient, and would impose undue burdens on the courts and on each individual plaintiff. Class treatment will permit the efficient, unified resolution of all claims arising from NITV's single, systemic course of misconduct. Many Class Members may not be aware of their rights or may lack the resources to pursue individual litigation.

## COUNT I — PRODUCTS LIABILITY (DESIGN DEFECT / STRICT LIABILITY)

**(On Behalf of Plaintiff and the Class)**

42. Plaintiff restates all preceding paragraphs as if fully set forth herein.

43. The CVSA device is a defective product. To recover under the strict product liability theory, a plaintiff must prove: (1) that he has sustained damages; (2) that the defendant was engaged in the business of manufacturing, assembling, selling, leasing, or distributing the product; (3) that the product was supplied by the defendant in a defective condition which rendered it unreasonably dangerous; and (4) that the defective condition was a proximate cause of plaintiff's damages. E.I. Du Pont de Nemours & Co. v. Dillaha, 280 Ark. 477, 479-80, 659 S.W.2d 756, 757-58 (1983); Ark. Code Ann. §§ 16-116-102, 4-86-102(a).

44. A "defective condition" is a condition that renders a product unsafe for reasonably foreseeable use and consumption. Ark. Code Ann. § 16-116-102(4). A product is "unreasonably dangerous" if it is dangerous to an extent beyond that which would be contemplated by the ordinary and reasonable user, assuming the ordinary knowledge of the community as to its characteristics, risks, and proper and improper uses. Ark. Code Ann. § 16-116-102(7); Lee v. Martin, 74 Ark. App. 193, 198, 45 S.W.3d 860, 863-64 (2001). The CVSA device fails both the consumer-expectations test and the risk-benefit test: an ADC official or correctional officer subjected to examination would not expect a device marketed as a reliable lie detector to perform no better than a coin toss. Crowe denied summary judgment on both theories under materially identical facts.

45. The NITV Defendants placed the defective CVSA device into the stream of commerce. The ADC purchased and used the CVSA device in reasonable reliance on NITV's representations about its reliability. ADC employees including Plaintiff and the Class Members were the foreseen and foreseeable end-users and victims of the device's defective operation.

46. Plaintiff also pleads breach of the implied warranty of merchantability and breach of the implied warranty of fitness for a particular purpose. To recover for breach of implied warranty of merchantability, the plaintiff must prove: (1) damages; (2) that the product was not fit for the ordinary purpose for which such goods are used; (3) that this unmerchantable condition was a proximate cause of damages; and (4) that plaintiff was a person the defendant might reasonably expect to use the product. Dillaha, 280 Ark. at 479-80, 659 S.W.2d at 757-58. The CVSA is not fit for its ordinary and marketed purpose—reliable truth verification—and Plaintiff and Class Members are precisely the persons NITV would reasonably expect to be affected by the device.

47. As a direct and proximate result of the CVSA device's design defect and breach of warranty, Plaintiff and Class Members suffered wrongful termination, loss of wages and benefits, reputational harm, and severe mental, emotional, and physical suffering.

48. The NITV Defendants' conduct was intentional, reckless, and knowing, entitling Plaintiff and the Class to punitive damages.

## COUNT II — NEGLIGENCE (INCLUDING NEGLIGENT OVERPROMOTION)

**(On Behalf of Plaintiff and the Class)**

49. Plaintiff restates all preceding paragraphs as if fully set forth herein.

50. The NITV Defendants owed a duty of reasonable care to persons foreseeably harmed by the CVSA device and by NITV's training and consulting activities, including Plaintiff and the Class Members, who were the foreseeable subjects of CVSA examinations and the foreseeable victims of erroneous results.

51. Under Restatement (Second) of Torts §§ 291-295, conduct is negligent when the actor's chosen course creates an unreasonable risk of harm considering the magnitude and likelihood of harm versus the utility of the conduct and the burden of precautions. The Complaint alleges CVSA devices are inherently unreliable—no more reliable than random chance—yet Defendants promoted them as tools to determine whether an employee is lying for disciplinary purposes and sold and trained end-users to deploy them accordingly. Those allegations squarely plead the Restatement risk-utility imbalance: the utility of marketing a truth-verification device is effectively zero if the device cannot do what is claimed, while the risk—false "deception" findings that trigger termination and reputational harm—is grave and foreseeable. Crowe recognized the same calculus as a triable negligence issue.

52. The NITV Defendants breached their duty of care by: (a) designing and manufacturing a device known to be scientifically unreliable; (b) marketing the device to the ADC using false representations of scientific validity and accuracy, including claims of a "97 percent" reliability rate or equivalent assurances; (c) training ADC examiners to administer and interpret CVSA examinations without adequate scientific grounding, conveying unjustified confidence in the device's accuracy; (d) consulting with ADC officials regarding the reliability of CVSA results without disclosing the device's inherent inaccuracy; and (e) continuing all of the foregoing despite actual knowledge of prior false positives, the Crowe litigation, and the resulting harm to individuals including ADC employees. Theories (c) and (d) constitute negligent overpromotion—a theory specifically recognized and sustained in Crowe in the CVSA context.

53. NITV cannot escape liability on the ground that the ADC independently decided to terminate Plaintiff. Where an accident results from two concurring causes both due to the

negligence of different persons, both actors are liable. Ward v. Walker, 206 Ark. 988, 992, 178 S.W.2d 62, 64 (1944). NITV's overpromotion and ADC's resulting reliance are concurrent causes of Plaintiff's and the Class's injuries.

54. As a direct and proximate result of the NITV Defendants' negligence, Plaintiff and Class Members suffered wrongful termination, loss of wages and benefits, reputational harm, and severe mental, emotional, and physical suffering.

55. The NITV Defendants' conduct was so egregious, reckless, and knowing as to warrant punitive damages.

**COUNT III — DEFAMATION (LIBEL AND SLANDER)**

**(On Behalf of Plaintiff and the Class)**

56. Plaintiff restates all preceding paragraphs as if fully set forth herein.

57. A viable action for defamation turns on whether the communication or publication tends or is reasonably calculated to cause harm to another's reputation. Northport Health Servs., Inc. v. Owens, 356 Ark. 630, 641, 158 S.W.3d 164, 171 (2004). A plaintiff must establish actual damage to reputation, but the showing of harm is slight—the law does not require proof of actual out-of-pocket expenses. Ellis v. Price, 337 Ark. 542, 549, 990 S.W.2d 543, 547 (1999); Roeben v. BG Excelsior Ltd. P'ship, 2009 Ark. App. 646, ¶ 7, 344 S.W.3d 93, 98.

58. The NITV Defendants, through the CVSA device and through NITV's training and consulting activities—including NITV's integrated scheme of software output, training/licensure, and consultation—caused false statements of fact to be made about

Plaintiff and each Class Member: specifically, that each was being deceptive, dishonest, or untruthful during their respective CVSA examinations. These statements were communicated to ADC supervisors, investigators, and other officials who relied upon them in making adverse employment decisions.

59. The statements were false. Plaintiff and Class Members were not being deceptive. The CVSA device is incapable of reliably making such determinations. The NITV Defendants had actual knowledge—or acted with reckless disregard for the truth—that the device's output was not a reliable indicator of deception.

60. The false statements harmed the professional reputations of Plaintiff and Class Members, caused their terminations, and subjected them to community stigma consistent with findings of dishonesty and workplace misconduct.

61. As a direct and proximate result, Plaintiff and Class Members have suffered loss of employment, wages, benefits, reputational harm, and mental, emotional, and physical suffering. The NITV Defendants' conduct was intentional, reckless, and knowing. Punitive damages are warranted.

## COUNT IV — FALSE LIGHT INVASION OF PRIVACY

**(On Behalf of Plaintiff and the Class)**

62. Plaintiff restates all preceding paragraphs as if fully set forth herein.

63. A false-light invasion of privacy claim requires: (1) that the false light in which the plaintiff was placed by the publicity would be highly offensive to a reasonable person; and (2) that the defendant had knowledge of or acted in reckless disregard as to the falsity of the

publicized matter and the false light in which the plaintiff would be placed. Dodrill v. Arkansas Democrat Co., 265 Ark. 628, 590 S.W.2d 840 (1979).

64. The NITV Defendants, through the CVSA device and NITV's attendant marketing, training, and consulting activities, publicized information about Plaintiff and Class Members that placed them in a false light—specifically, that they had been dishonest, deceptive, and/or had committed policy violations that warranted termination from employment.

65. The false light in which Plaintiff and the Class Members were placed would be highly offensive to a reasonable person. Being labeled as dishonest and terminated for alleged dishonesty carries severe reputational and professional consequences, particularly for correctional officers whose employment requires the public's trust.

66. Each Defendant had knowledge of or acted in reckless disregard as to the falsity of the publicized matter, as the CVSA device is inherently unreliable and Defendants knew it to be so.

67. As a direct and proximate result, Plaintiff and Class Members have suffered reputational harm, loss of employment and wages, and severe mental, emotional, and physical suffering. Punitive damages are warranted.

## COUNT V — VIOLATIONS OF THE ARKANSAS DECEPTIVE TRADE PRACTICES ACT

**Ark. Code Ann. § 4-88-101 et seq.**

**(On Behalf of Plaintiff and the Class)**

68. Plaintiff restates all preceding paragraphs as if fully set forth herein.

69. The NITV Defendants are suppliers engaged in trade and commerce within the meaning of the Arkansas Deceptive Trade Practices Act ("ADTPA"), Ark. Code Ann. § 4-88-101 et seq. The ADTPA grants a private right of action to "any person" who suffers actual damage "as a result of" an ADTPA violation. Ark. Code Ann. § 4-88-113(f). Plaintiff and the Class are "persons" who have suffered concrete injury caused by NITV's deceptive trade practices.

70. The ADTPA reaches business conduct that harms consumers even where the challenged practice is not a conventional consumer retail transaction. The Arkansas Supreme Court affirmed an ADTPA violation in Baptist Health v. Murphy, 365 Ark. 115, 226 S.W.3d 800 (2006), based on a hospital's market conduct that harmed patients as ultimate consumers—even though the immediate contractual conduct was between institutional actors. Here, NITV's marketing, training, and licensing of the CVSA to the ADC is consumer-oriented in the Baptist sense because it targets the public-facing delivery of a critical government service—truth-finding in correctional and disciplinary investigations—where ADC employees (Plaintiff and the Class) are the end-users and consumers of the consequences of NITV's false accuracy representations.

71. The NITV Defendants engaged in deceptive and unconscionable trade practices in violation of the ADTPA by: (a) representing that the CVSA device has characteristics, uses, benefits, and qualities—scientific reliability in detecting deception—that it does not have; (b) representing that the CVSA device conforms to or has been validated by scientific standards when it has not; (c) engaging in deception, fraud, false pretense, misrepresentation, and concealment of material facts—including the device's documented unreliability and the existence of prior false positives and resulting harm—in connection

with the sale and marketing of the CVSA device to the ADC; and (d) advertising the CVSA device with intent not to sell it as advertised.

72. The ADTPA's safe harbor—which applies only to "actions or transactions specifically permitted under laws administered by" a regulator, Ark. Code Ann. § 4-88-101(3)—does not apply here. The challenged action is NITV's role as a commercial supplier: its design, manufacture, sale, and marketing of the CVSA with deceptive accuracy representations. Nothing in Arkansas law specifically permits a manufacturer to advertise CVSA as a lie- or truth-verification device, to claim a particular accuracy rate, or to place such claims into commerce to induce purchases. Licensing of examiners or an agency's permission to use a CVSA tool is fundamentally different from a regulatory approval of the manufacturer's specific marketing representations. Arkansas courts construe this safe harbor narrowly: it applies only when the precise practice at issue has been "specifically permitted or authorized" by a regulator—not where a regulator merely exists or licenses a profession generally. Air Evac EMS, Inc. v. USAble Mut. Ins. Co., 2017 Ark. 368, at 6, 533 S.W.3d 572, 575-76.

73. Further, pursuant to Ark. Code Ann. § 4-88-113, every officer or director who directly or indirectly controls, facilitates, or aids a person in an ADTPA violation is jointly and severally liable if he knew or reasonably should have known of the facts giving rise to the violation. Charles Humble—as inventor, director, and controlling officer of the NITV entities—is jointly and severally liable under this provision.

74. As a direct and proximate result of the NITV Defendants' violations of the ADTPA, Plaintiff and Class Members have suffered actual damages, including loss of employment, wages, and benefits, as well as reputational harm and mental, emotional, and physical

suffering. Plaintiff and the Class are entitled to recover actual damages, attorneys' fees, and costs. The NITV Defendants' conduct was willful and knowing, entitling Plaintiff and the Class to punitive damages.

## JURY DEMAND

75. Plaintiff, individually and on behalf of the Class, demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff **MELBORN WAYNE HOGAN**, individually and on behalf of all Class Members, respectfully prays for judgment against Defendants **NITV, LLC; NITV Federal Services, LLC; Charles Humble; and John Does 1-5**, jointly and severally, as follows:

(a) An order certifying this action as a class action under Rule 2 of the Arkansas Rules of Civil Procedure, designating Plaintiff as class representative, and designating Plaintiff's counsel as class counsel;

(b) Compensatory damages for Plaintiff and each Class Member, including lost wages, lost employment benefits, lost future earning capacity, and damages for harm to reputation and for mental, emotional, and physical suffering;

(c) Punitive damages against Defendants in an amount sufficient to punish and deter the intentional, reckless, and knowing misconduct alleged herein;

(d) Reasonable attorneys' fees and costs pursuant to the Arkansas Deceptive Trade Practices Act, Ark. Code Ann. § 4-88-113(f), and applicable law;

(e) Pre-judgment and post-judgment interest at the maximum rate allowed by law;

(f) Injunctive relief prohibiting the NITV Defendants from marketing, selling, or supporting the use of CVSA devices to the ADC or any other Arkansas correctional or law enforcement agency without full and prominent disclosure of the scientific evidence establishing the device's unreliability, including the Hollien/Harnsberger and Damphousse studies and Department of Defense warnings;

(g) Leave to amend this Complaint to add additional facts or parties as ascertained through discovery; and

(h) Such other and further relief as this Court deems just, equitable, and proper.

Respectfully submitted,

**SUTTER & GILLHAM, P.L.L.C.**
Attorneys at Law
310 Natural Resources Ste 2
Little Rock, AR 72205
501/315-1910 Office | 501/315-1916 Facsimile
*Attorneys for Plaintiff and the Class*

By: */s/ Luther Oneal Sutter*
Luther Oneal Sutter, Esq., ARBN 95-031
luther.sutterlaw@gmail.com